### IN THE UNITED STATES DISTRICT COURT
### EASTERN DISTRICT OF ARKANSAS
### CENTRAL DIVISION

**WILLIAM F. LIMBER**                                                          **PLAINTIFF**

**V.**                              **No. 4:25-CV-00916-KGB-PSH**

**FRANK BISIGNANO, Commissioner,**
**Social Security Administration**                                    **DEFENDANT**

### RECOMMENDED DISPOSITION

This Recommended Disposition ("Recommendation") has been sent to Chief United States District Judge Kristine G. Baker. You may file written objections to all or part of this Recommendation. If you do so, those objections must: (1) specifically explain the factual and/or legal basis for your objection; and (2) be received by the Clerk of this Court within 14 days of the date of this Recommendation. If you do not file objections, Chief Judge Baker may adopt this Recommendation without independently reviewing all of the evidence in the record. By not objecting, you may waive the right to appeal questions of fact.

## I.    INTRODUCTION

On June 21, 2022, William F. Limber ("Mr. Limber") filed an application for Title II disability benefits, and on December 16, 2022, he filed a Title XVI application for supplemental security income. (Tr. at 17). He alleged that his

disability began on April 4, 2021.[1] *Id*. The claims were denied at the initial and reconsideration levels. *Id*. Following a hearing, an Administrative Law Judge ("ALJ") found that Mr. Limber was not disabled. (Tr. at 17-29). The Appeals Council denied Mr. Limber's request for review of the ALJ's decision. (Tr. at 1-6).

The ALJ's decision now stands as the final decision of the Commissioner. For the reasons stated below, the Court recommends that the Commissioner's decision be affirmed.

## II.     THE COMMISSIONER'S DECISION

The ALJ found, at Step One, that Mr. Limber (who was 55 years old on the alleged onset date) has not engaged in substantial gainful activity since May 25, 2022, the amended alleged onset date.[2] (Tr. at 19, 26). At Step Two, the ALJ determined that Mr. Limber has the following severe impairments: obesity, degenerative disc disease of the lumbar spine, compression fracture of the thoracic spine, diabetes mellitus with hyperglycemia, osteopenia, osteoarthritis of the right shoulder, seizure disorder, anxiety, attention deficit hyperactivity disorder, bipolar

---

[1] He subsequently amended his alleged onset date to May 25, 2022. *Id*.

[2] The ALJ followed the required five-step sequence to determine: (1) whether the claimant was engaged in substantial gainful activity; (2) if not, whether the claimant had a severe impairment; (3) if so, whether the impairment (or combination of impairments) met or equaled a listed impairment; (4) if not, whether the impairment (or combination of impairments) prevented the claimant from performing past relevant work; and (5) if so, whether the impairment (or combination of impairments) prevented the claimant from performing any other jobs available in significant numbers in the national economy. 20 C.F.R. §§ 404.1520(a)–(g), 416.920(a)–(g).

disorder, major depression, post-traumatic stress disorder, and mood disorder. (Tr. at 20).

At Step Three, the ALJ determined that Mr. Limber's impairments did not meet or equal a Listing.[3] (Tr. at 21-22). Next, the ALJ concluded that Mr. Limber has the residual functional capacity ("RFC") to perform work at the medium exertional level with the following additional limitations: (1) no more than occasional climbing of ropes, ladders, or scaffolding; (2) no more than frequent climbing of ramps or stairs; (3) no more than occasional overhead reaching on the right side; (4) no work at unprotected heights and no work around dangerous moving machinery; (5) no driving; (6) able to understand, remember, and carry out detailed but not complex instructions, but no work performed in a production rate environment (such as assembly line work); (7) limited to occasional interaction with supervisors, coworkers, and the general public. (Tr. at 23).

The ALJ determined at Step Four that Mr. Limber is unable to perform his past relevant work as a bus driver and home health attendant. (Tr. at 26). Based upon Vocational Expert ("VE") testimony, the ALJ found, based on Mr. Limber's age, education, work experience, and RFC, that there are jobs in the national economy that Mr. Limber can perform. (Tr. at 27-28). Therefore, the ALJ concluded that Mr.

---

[3] The Listings define impairments that would prevent an adult, regardless of his age, education, or work experience, from performing any gainful activity, not just "substantial gainful activity." *Sullivan v. Zebley*, 493 U.S. 521, 532 (1990).

Limber was not disabled. *Id.*

## III.   DISCUSSION

### A.   Standard of Review

"In reviewing the ALJ's decision," the Court "examine[s] whether it is supported by substantial evidence on the record as a whole and whether the ALJ made any legal errors." *Miller v. Colvin*, 784 F.3d 472, 477 (8th Cir. 2015); *see also* 42 U.S.C. § 405(g). "Substantial evidence is that which a 'reasonable mind might accept as adequate to support a conclusion,' whereas substantial evidence on the record as a whole entails 'a more scrutinizing analysis.'" *Reed v. Barnhart*, 399 F.3d 917, 920 (8th Cir. 2005) (citations omitted). "Our review 'is more than an examination of the record for the existence of substantial evidence in support of the Commissioner's decision . . . . [W]e also take into account whatever in the record fairly detracts from that decision.'" *Gann v. Berryhill*, 864 F.3d 947, 950-51 (8th Cir. 2017) (citation omitted). "Reversal is not warranted, however, 'merely because substantial evidence would have supported an opposite decision.'" *Reed*, 399 F.3d at 920 (citation omitted).

In clarifying the "substantial evidence" standard applicable to review of administrative decisions, the Supreme Court has explained: "And whatever the meaning of 'substantial' in other contexts, the threshold for such evidentiary sufficiency is not high. Substantial evidence . . . is 'more than a mere scintilla.'"

*Biestek v. Berryhill*, 587 U.S. 97, 103 (2019) (quoting *Consolidated Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938)). "It means—and means only—'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Id*. (citation omitted).

### B.    Summary of Medical History

Mr. Limber's arguments focus on his physical impairments. The Court will limit its discussion thereto.[4]

Mr. Limber had problems with his back, neck, and right shoulder. Objective imaging confirmed this. A 2022 lumbar x-ray showed mild degenerative changes and facet arthropathy (Tr. at 952), and a 2023 thoracic spine MRI revealed a compression fracture and bilateral foraminal narrowing, but no spinal canal stenosis (Tr. at 1020-1021). A right shoulder x-ray in 2022 showed chronic degenerative changes, but no acute fracture. (Tr. at 954). Musculoskeletal examinations showed some tenderness, but mostly normal range of motion, negative straight-leg raises, and normal gait and posture.[5] (Tr. at 351-358. 369, 495-496, 600-621, 905-920, 1108-1116, 1184-1185, 1357-1383). Mr. Limber admitted to doing heavy lifting in April 2022, when he heard a pop in his left shoulder. (Tr. at 611-614). But, at that

---

[4] *See Noerper v. Saul*, 964 F.3d 738, 741 (8th Cir. 2020) ("Although our detailed discussion is targeted, we have considered the claimant's arguments and the record as a whole as to all of her impairments and their cumulative effect on her limitations.")

[5] Normal clinical findings may support an ALJ's decision to deny benefits. *Gowell v. Apfel*, 242 F.3d 793, 796 (8th Cir. 2001).

time, doctors' exams showed generally normal findings in both shoulders. *Id*. In January 2024, Mr. Limber told his doctor that he participated in exercise every other day.[6] (Tr. at 1369).

A consultative examiner saw Mr. Limber in October 2023. She found only mild-to-moderate conditions in his back and shoulder, although there was some tenderness to palpation. (Tr. at 1183-1186). She concluded that his conditions did not limit his ability to walk, stand, sit, lift, carry, handle, finger, see, hear or speak. *Id*. The ALJ found this opinion to be consistent with the evidence, but limited Mr. Limber to more physical restrictions in the RFC. (Tr. at 25).

The two state-agency medical experts found that Mr. Limber could perform medium work with some postural restrictions. (Tr. at 68-80. 92-107). The ALJ found these opinions to be persuasive, but the RFC imposed greater limitations, showing that the ALJ credited Mr. Limber's complaints of pain. (Tr. at 26).

### C.    Mr. Limber's Arguments on Appeal

In his brief, Mr. Limber contends that the evidence supporting the ALJ's decision is less than substantial. Specifically, he argues that he could not perform the requirements of medium work, especially the lifting and carrying required.[7]  He

---

[6] Such activities undermine his claims of disability. *Andrews v. Colvin*, 791 F.3d 923, 929 (8th Cir. 2015).

[7] Medium work is defined as lifting or carrying no more than 50 pounds at a time with frequent lifting and carrying of up to 25 pounds, with a good deal of walking or standing. 20 C.F.R. § 404.1567(c).

also argues that because he was later found to be disabled, the RFC for medium work was error.

The overarching claim is that medium work outstrips Mr. Limber's abilities. Defendant correctly points out that Mr. Limber only sought treatment for shoulder issues on two occasions. (Tr. at 599-616); *Doc. No. 9 at 6*. He did not have ongoing complaints of shoulder pain. As the ALJ noted, he said he was able to exercise. And objective imaging showed no more than mild-to-moderate conditions in his back and shoulders. No treating doctor placed any work restrictions on Mr. Limber. And he did not require aggressive treatment like surgery.

Mr. Limber points to his subjective allegations that he had pain with heavy lifting and heard his shoulder pop on one occasion. Mere allegations do not support a finding of disability.[8]  And a diagnosis alone does not equate to a disability finding either.[9]  There must be established functional loss.[10]  The medical opinions in the record are consistent in concluding that Mr. Limber could perform medium work. He has not shown that the RFC for medium work with postural restrictions outstripped his abilities.

---

[8] *See Reter v. Railroad Retirement Board*, 465 F.3d 896, 899 (8th Cir. 2006).

[9] *See Trenary v. Bowen*, 898 F.2d 1361, 1364 (8th Cir. 1990).

[10] Functional limitations must have a basis in the medical evidence and are not established based solely on a claimant's statement of symptoms. 20 C.F.R. §§ 404.1508, 416.908; *Harris v. Barnhart*, 356 F.3d 926, 930 (8th Cir. 2004).

Following the ALJ's denial of benefits, Mr. Limber filed another application with a new onset date: August 6, 2024, the day after the instant ALJ's decision. *Doc. No. 5-2 at 4*. Mr. Limber was found to be disabled, based on this subsequent application, as of the day after the ALJ's decision. *Id*. He argues in his brief that this conclusion shows that he was disabled during the relevant time-period addressed by this ALJ. However, new evidence of reoccurring falls and positive straight-leg raise after the relevant time-period can explain why he was found disabled later. *Doc. No. 5-2 at 5-6*. Mr. Limber's condition had deteriorated as of the new alleged onset date. But the closed record before the ALJ in this instance did not show that Mr. Limber would not be able to perform medium work.

Mr. Limber cites to cases outside the Eighth Circuit for the proposition that a later disability finding compromises the ALJ's decision that a claimant is not disabled. *Doc. No. 5 at 7*. But cases from this Circuit do not stand for that proposition.[11]  The Court finds no error.

## IV.    CONCLUSION

There is substantial evidence to support the Commissioner's decision that Mr. Limber was not disabled. The RFC incorporated all of Mr. Limber's credible

---

[11] *Dickson v. Astrue*, No. 5:07-CV-00028-HLJ, 2008 WL 829206, at *1 (E.D. Ark. Mar. 26, 2008) ("a different result on a subsequent application for disability is not material to the previous finding"); *Gunsaulis v. Astrue*, No. 11-5279, 2012 WL 4361543, at *6 (W.D. Ark. Oct. 30, 2012) ("a contrary decision following [the ALJ's decision at issue] does not deprive the ALJ's decision of presumptive validity based upon his well-reasoned review of the evidence.")

limitations, and a subsequent disability finding does not compromise the instant disability denial.

IT IS THEREFORE RECOMMENDED THAT:

1.    The Commissioner's decision be AFFIRMED.

2.    Judgment be entered for the Defendant.

DATED this 2nd day of June, 2026.

_____
UNITED STATES MAGISTRATE JUDGE